UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-241 (ECT/DTS)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PETER MICHAEL GUEVARA,<br><br>Defendant. | **GOVERNMENT'S TRIAL BRIEF** |

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Emily A. Polachek and LeeAnn K. Bell, Assistant United States Attorneys, hereby submits this trial brief outlining the evidence the Government intends to produce at trial. The Government respectfully requests the opportunity to supplement this brief and other trial documents as necessary to respond to defense arguments and other developments prior to trial.

## BACKGROUND

**I.   TRIAL COUNSEL**

The United States will be represented at trial by the following Assistant United States Attorneys:

LeeAnn K. Bell
300 S. 4th St., Suite 600
Minneapolis, MN  55415
Mpls Tel:  612-664-5600
St. Paul Tel:  651-848-1950
leeann.bell@usdoj.gov

Emily A. Polachek
300 S. 4th St., Suite 600
Minneapolis, MN  55415
Mpls Tel:  612-664-5600
St. Paul Tel:  651-848-1950
emily.polachek@usdoj.gov

## II. LENGTH OF TRIAL

The Government anticipates that its case-in-chief can be presented in two days. Allowing for jury selection, jury charge, and a possible defense case, the Government believes that four days should be sufficient for the entire trial.

## III. CHARGES AGAINST THE DEFENDANT

Defendant is charged by Indictment with one count of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(4) and 2252(b)(2), and possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(2). These counts relate to child pornography files found on an unauthorized cell phone found in Defendant's pocket after a probationary search.

## IV. ELEMENTS OF THE CHARGED OFFENSES

The crime of receipt of child pornography, as charged in Count 1 of the Indictment, has three elements:

> *One*, that on or about November 9, 2020, the defendant knowingly received one or more electronic files that contained visual depictions of child pornography;[1]

---

[1] The phrase "child pornography" means any visual depiction of a minor engaging in sexually explicit conduct, where the minor was engaged in the sexually explicit conduct during production of the depiction. *See* Manual of Model Criminal Jury Instructions for the Eighth Circuit, § 6.18.2252 (2022) (as modified).

2

*Two*, the defendant knew that the visual depictions were of a minor[2] engaging in sexually explicit conduct;[3] and

*Three*, the visual depictions were mailed, shipped, or transported in interstate or foreign commerce, or affecting interstate or foreign commerce, by any means, including by computer.[4]

The crime of possession of child pornography, as charged in Count 2 of the Indictment, has three necessary elements, which are:

---

[2] The term "minor" means any person under the age of eighteen years. *See* Manual of Model Criminal Jury Instructions for the Eighth Circuit, § 6.18.2252 (2022).

[3] "Sexually explicit conduct" means actual or simulated sexual intercourse, (including genital-genital, oral-genital, anal-genital, or oral-anal intercourse), whether between persons of the same or opposite sex; masturbation, sadistic or masochistic abuse, or lascivious exhibition of the genitals or pubic area of any person. *See* Manual of Model Criminal Jury Instructions for the Eighth Circuit, § 6.18.2252 (2022). Whether a visual depiction of the genitals or pubic area constitutes a lascivious exhibition requires a consideration of the overall content of the material. The trier of fact may consider such factors as: (1) whether the focal point of the picture is on the minor's genitals or pubic area; (2) whether the setting of the picture is sexually suggestive, that is, in a place or pose generally associated with sexual activity; (3) whether the minor is depicted in an unnatural pose or in inappropriate attire, considering the age of the minor; (4) whether the minor is fully or partially clothed, or nude; (5) whether the picture suggests sexual coyness or a willingness to engage in sexual activity; (6) whether the picture is intended or designed to elicit a sexual response in the viewer; (7) whether the picture portrays the minor as a sexual object; and (8) the caption(s) on the picture(s). *Id.*; *see also United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986). All of these *Dost* factors need not be present, nor are these factors are exhaustive. *See United States v. McCoy*, 108 F.4th 639, 643–44 (8th Cir. 2024); *United States v. Wallenfang*, 568 F.3d 649, 657 (8th Cir. 2009).

[4] *See* Manual of Model Criminal Jury Instructions for the Eighth Circuit, § 6.18.2252; 18 U.S.C. §§ 2252(a)(2), (b)(1).

3

>*One*, that on or about October 3, 2019, the defendant knowingly possessed one or more computer files that contained visual depictions of child pornography;
>
>*Two*, that the defendant knew that the visual depictions were of a minor engaging in sexually explicit conduct; and
>
>*Three*, that the visual depictions had been mailed, shipped, or transported in interstate or foreign commerce or affecting interstate or foreign commerce by any means, including by computer.

*See* Manual of Model Criminal Jury Instructions for the Eighth Circuit, § 6.18.2252; 18 U.S.C. §§ 2252(a)(4), (b)(2).

## ANTICIPATED FACTS AT TRIAL[5]

Defendant, who was previously convicted in 2014 in Minnesota state court for possessing child pornography, was once again found to be in possession of child pornography while on intensive supervised release for his previous conviction. The Government anticipates presenting the following evidence at trial.

---

[5] The factual summary provided, given upon information and belief, is not intended to be a full description of the Government's evidence in this case. It is provided in order to give the Court sufficient information to consider the Government's motions in limine. The Government respectfully reserves the right to supplement its trial brief or its motions in limine in advance of the scheduled pretrial conference in light of upcoming meetings with witnesses and in response to Defendant's filings.

## I.   PRIOR CONVICTION

On June 4, 2014, Defendant was convicted in Sherburne County of five counts of Possession of Pornographic Work Depicting Minors in violation of Minn. Stat. § 617.247, subd. 4(a).  The case began in June 2011 when Defendant's wife contacted the police to say that she had found child pornography on some thumb drives in their home.  A forensic examination of four thumb drives found over 76,000 files depicting child pornography and child erotica.  The National Center for Missing and Exploited Children (NCMEC) performed a hash value comparison with these files and determined that 9,519 files of victim-identified child pornography from hundreds of known child pornography series.  These files depicted prepubescent girls engaged in sexually explicit acts (performing oral sex or being penetrated) or posing in a sexual manner with exposed genitals.

Defendant was charged with 19 counts of Possession of Pornographic Work Depicting Minors, and pleaded guilty to five of those counts.  He was sentenced to 39 months in custody, to be followed by 10 years of supervised release.  Due in part to his previous conviction in 1991 for raping a woman in Dakota County, Defendant was assigned to intensive supervised release (ISR).  Defendant began ISR in August 2017.  The following month, Defendant violated the terms of his supervised release by having children's undergarments in a closet adjacent to his bedroom, possessing a jackknife, possessing multiple pornographic movies, and possessing unauthorized internet-capable devices.  Defendant violated ISR again in October 2018 when he removed his

5

GPS device and absconded to Florida, where he was arrested two months later. And on August 23, 2019, Defendant was convicted in Ramsey County for failing to abide by his predatory offender registration requirements. Defendant returned to custody and was released to ISR in Ramsey County on April 27, 2020.

## II.   PRESENT OFFENSE CONDUCT

### A.   Discovery of the Unauthorized iPhone

While on ISR in 2020, Defendant was supervised by Agent Corey Barth. At trial, Agent Barth will testify that Defendant's conditions of release included a condition that Defendant "submit to any unannounced visits or searches by the agent/designee of the offender's person, residence, possessions, cell phone, vehicle, or premises." Defendant was required to "disclose to the agent/designee all computers, internet capable devices or digital storage devices" within his possession or control and all such devices were "subject to search and monitoring." Pursuant to these conditions, Defendant was permitted to use a flip phone. He was not authorized to possess any other phones.

In early November 2020, Agent Barth received a tip from an individual who had previously provided accurate information regarding Defendant's conduct that Defendant had an unauthorized smartphone that Defendant was hiding before each of Agent Barth's visits. Agent Barth assembled a team of DOC Investigators and other ISR agents to assist him in performing a surprise search for the unauthorized phone. This team included DOC Investigators Shawn Bliven, as well as ISR Agent Dave Murray, both of whom are expected to testify at trial.

Law enforcement executed this search on November 12, 2020.  The ISR agents, who are unarmed, waited out of sight while the DOC investigators stopped Defendant as he got out of his car.  Investigator Bliven found an Apple iPhone XR with serial number DX3CFNV5KXKN in Defendant's pocket, and SD and SIM cards in a baggy in the trunk of Defendant's car.  Defendant's authorized flip phone was on the front passenger seat.  Law enforcement put the iPhone in airplane mode and set it on the car.  Agent Barth then approached the scene and looked at the iPhone, confirming that it was an unauthorized device.

Agent Murray attempted to create an extraction from the iPhone, also enlisting help from the Minnesota Bureau of Criminal Apprehension.  Without the password to the phone, they were able to make a partial extraction that included enough data for Agent Murray to conclude there was suspected child pornography on the phone.  Agent Murray then contacted (now retired) FBI Special Agent Robert Blackmore, who began investigating the case.

**B.    Forensic Examination of the iPhone**

Digital Forensic Examiner (DFE) Doug Dvorak with the FBI's Computer Analysis and Response Team (CART) was asked to examine the iPhone.  By the time the phone made its way to CART, law enforcement had heard Defendant on jail calls instructing his family members about how to remotely lock and erase the contents of the iPhone.  To preserve the evidence, DFE Dvorak made a forensic image of the phone. SA Blackmore then obtained a federal search warrant to review the contents of

that forensic image. When he did so, SA Blackmore also saw more than 4,000 suspected images and videos of child pornography. SA Blackmore sent the hash values for these files to NCMEC, who found 895 hash-matched files depicting the sexual abuse of 82 identified minor victims.

There were several files located in the phone's "Downloads" folder. Two of these are charged in Count 1 of the Indictment:

> **Video A**
> File Name: 1.mp4
> Creation Date: 11/9/20, 5:25:22 a.m.
> Description: This video is 17 seconds long and shows a prepubescent girl performing oral sex on an adult male.
>
> **Video B**
> File Name: 2.mp4
> Creation Date: 11/9/20, 5:53:26 a.m.
> Description: This video is approximately 59 seconds long and shows a prepubescent girl performing oral sex on a prepubescent boy.

The Government has created an exhibit showing a timeline of the activities performed on the iPhone in the hours before and after these videos appeared in the Downloads folder. Earlier in the day, the phone's user texts with Defendant's sister regarding the "Dad's" headstone, sending a screenshot of said headstone to Defendant's sister. The headstone has a piece of tape with the name "Guevara." A few hours later, the phone's user is visiting websites with names that include child pornography terminology, like "Lolita," "PTHC," and "pedo." Shortly before each of the Count 1 videos are downloaded, the phone was browsing a Russian website with the files' names in the URL, suggesting Defendant found the videos on that Russian website and then

8

downloaded the videos for ready access on his phone. The period between the time that Defendant visited the webpage and the time of download suggests Defendant viewed the video before downloading it, meaning that he knew the file contained child pornography when it was downloaded. Additionally, the children depicted in the videos are clearly prepubescent, meaning they were under the age of 18 when the videos were produced. SA Blackmore will testify that, in his dozens of years of experience investigating child exploitation crimes, he has learned that it is difficult to create fake videos of child pornography and that the charged videos appear to be depictions of real children.

The Government also charged Defendant with one count of possessing other files depicting child sexual abuse and lascivious exhibition of children's genitals. The following ten files are specifically enumerated in Count 2 of the Indictment:

> **Image C**
> File Name:  IMG_0261.GIF
> File Path:  00008020-001065093C83002E_files_partial-afu.zip/private/var/mobile/Media/DCIM/100APPLE/IMG_0261.GIF
> Creation Date:  10/15/2020, 1:51 a.m.
> Description:  Image file in graphic interchange format depicting a prepubescent girl performing oral sex on an adult male.
>
> **Image D**
> File Name:  IMG_0333.GIF
> File Path:  00008020-001065093C83002E_files_partial-afu.zip/private/var/mobile/Media/DCIM/100APPLE/IMG_0333.GIF
> Creation Date:  10/27/2020, 2:22 a.m.
> Description:  Image file in graphic interchange format that depicts a naked prepubescent girl performing oral sex on an adult man.

**Image E**

File Name:  IMG_0502.JPG

File Path:   00008020-001065093C83002E_files_partial-afu.zip/private/var/mobile/Media/DCIM/100APPLE/IMG_0502.JPG

Creation Date:  11/9/2020,  1:36 a.m.

Description:  Image file depicting a naked prepubescent girl and an adult male performing oral sex on each other.

**Image F**

File Name:  IMG_0255.GIF

File Path:   00008020-001065093C83002E_files_partial-afu.zip/private/var/mobile/Media/DCIM/100APPLE/IMG_0255.GIF

Creation Date:  10/15/2020, 1:21 a.m.

Description:  Image file in graphic interchange format depicting an adult inserting a foreign object into the rectum of a prepubescent girl.

**Image G**

File Name:  IMG_0504.JPG

File Path:   00008020-001065093C83002E_files_partial-afu.zip/private/var/mobile/Media/DCIM/100APPLE/IMG_0504.JPG

Creation Date:  11/9/2020, 1:42 a.m.

Description:  Image file depicting a prepubescent girl performing oral sex on an adult male.

**Image H**

File Name:  IMG_0351.PNG

File Path:   00008020-001065093C83002E_files_partial-afu.zip/private/var/mobile/Media/DCIM/100APPLE/IMG_0351.PNG

Creation Date:  10/27/2020, 2:53 a.m.

Description:  Image file from the infamous "Tara" series depicting a naked prepubescent girl on her hands and knees with a naked adult man standing behind her and appearing to sexually penetrate her.

**Image I**

File Name:  IMG_0370.GIF

File Path:   00008020-001065093C83002E_files_partial-afu.zip/private/var/mobile/Media/DCIM/100APPLE/IMG_0370.GIF

Creation Date:  10/27/2020, 3:24 a.m.

Description:  Image file in graphic interchange format depicting a naked prepubescent girl sitting on a naked adult man who appears to be penetrating the girl's vagina with his penis.

**Image J**
File Name:  sexy.[CHILD's FIRST NAME].jpg
File Path:  00008020-001065093C83002E_files_partial-afu.zip/private/var/mobile/Containers/Data/Application/997D22A1-66D8-4AA7-AF88-A6D801365950/Documents/P-R-S-02.November.2020/P-R-S-02.November.2020/S/Sexy.[Child's First Name].jpg
Creation Date:  8/18/2020, 11:49 a.m.
Accessed Date:  11/8/2020, 9:07 p.m.
Description:  Image file depicting a naked pubescent girl on her knees and using her hands to open her genitalia towards the camera.

**Image K**
File Name:  IMG_0366.GIF
File Path:  00008020-001065093C83002E_files_partial-afu.zip/private/var/mobile/Media/DCIM/100APPLE/IMG_0366.GIF
Creation Date:  10/27/2020, 3:18 a.m.
Description:  Image file in graphic interchange format depicting a prepubescent girl performing oral sex on an adult male.

**Image L**
File Name:  IMG_0355.GIF
File Path:  00008020-001065093C83002E_files_partial-afu.zip/private/var/mobile/Media/DCIM/100APPLE/IMG_0355.GIF
Creation Date:  10/27/2020, 3:01 a.m.
Description:  Image file in graphic interchange format depicting a prepubescent girl performing oral sex on an adult male.

SA Blackmore retired from the FBI before this conclusion of this case. In preparation for trial, CART DFE Vicki Klemz reviewed DFE Dvorak's extraction of the phone. Both SA Blackmore and DFE Klemz will offer testimony about this extraction. SA Blackmore's testimony will center on the discovery of the files, his own experiences having seen some of these images in other cases, and his knowledge of these images being depictions of real children under the age of 18.

DFE Klemz will offer testimony about exhibits that she created from the phone extraction. For example, DFE Klemz reviewed the contents of the iPhone's photo gallery application and created screenshots for the jury. The vast majority of that photo gallery is filled with images of naked young girls. Interspersed in this gallery are selfies of Defendant, photos from an empty house that Defendant worked at for some time, and photos of Defendant's father's headstone.

Either SA Blackmore or DFE Klemz will testify about the plethora of attribution evidence showing that the iPhone belonged to Defendant. For example, administrative subpoenas to Apple and AT&T showed that Defendant's mother was listed as the subscriber for the iPhone beginning in July 2020. Progressive insurance documents in Defendant's name for the car that Defendant registered as his with the BCA were on the phone, as well as an application from Defendant to Cornerstone Behavioral Health. There are text messages and emails addressed to "Peter," and autosave data includes "firstname=Peter, lastname=Guevara." And Agent Barth will verify that a recording found on the iPhone is a conversation that happened between Defendant and Agent Barth.

The Government will also offer a portion of a jail call with Defendant's mother in which Defendant calls the Apple iPhone "my phone," before catching himself and emphasizing that it is "*the* phone."

Should Defendant choose to testify, the Government may seek to recall Agent Barth to testify about Defendant's character for truthfulness during their time together.

The Government may also play additional jail calls in which Defendant asks his mother to have the iPhone remotely locked and wiped and berates her for not doing so before Agent Murray got the partial extraction from the phone.

## MOTIONS IN LIMINE

The Government has filed the following motions in limine for the Court's review under separate cover:

1. Motion to preclude mention of punishment to the jury;
2. Motion to preclude Defendant from offering self-serving hearsay.
3. Motion to preclude unnoticed defenses;
4. Motion to preclude Defendant from referencing jury nullification;
5. Motion to sequester witnesses;
6. Motion to preclude improper character evidence;
7. Motion to admit Rule 1006 summary exhibits;
8. Motion to permit publication of selected depictions of child pornography to the jury during trial, including files not enumerated in the indictment; and
9. Motion to admit evidence of Defendant's 2014 conviction for possession of child pornography and testimony related to Defendant's conditions of intensive supervised release.

## UNRESOLVED ISSUES

### I. EVIDENTIARY ISSUES

#### A. Stipulations

On September 3, 2024, the Government offered to stipulate to the interstate commerce element of the charged offense, as well as to the fact that the children

13

depicted in the child pornography that Defendant possessed were real people under the age of either 12 or 18 at the time the images were produced. It is the Government's understanding that Defendant has declined to stipulate to these matters. The Government will instead call Detective Captain David L. Scroggins from the Rossville Police Department in Georgia. Captain Scroggins was involved in the investigation of the offenses that led to the creation of the "Tara" series, depicted in Image H. Captain Scroggins will testify about the case and the victim (who will be referred to by the series pseudonym "Tara") to establish that Image H depicts a real minor child. Captain Scroggins may also offer testimony about what it means that Tara is a NCMEC-identified victim and that process. SA Blackmore will also offer testimony based on his training and experience related to identifying a victim's age and the distinguishing between real and artificially generated images and videos.

To establish interstate nexus, the Government will offer testimony from SA Klemz that the iPhone has an inscription indicating that it was assembled overseas. Trade inscriptions, like those on Defendant's devices, are self-authenticating and thus "require no extrinsic evidence of authenticity in order to be admitted." *See* Fed. R. Evid. 902(7). These marks are inherently reliable, do not contain hearsay, and do not implicate the Confrontation Clause. *See United States v. Burdulis*, 753 F.3d 255, 262–64 (1st. Cir. 2014); *United States v. Koch*, 625 F.3d 470, 480 (8th Cir. 2010); *United States v. Wehrle*, 985 F.3d 549, 555–56 (7th Cir. 2021). SA Blackmore may also testify from

personal knowledge and experience about particular NCMEC-identified series victims whose depictions were produced outside the State of Minnesota.

### B. Admission of Self-Authenticating Records

The Government may move for admission of self-authenticating records to prove Defendant's prior conviction for possession of child pornography. Such records are admissible under Rule 902 of the Federal Rules of Evidence.

### C. Admission of Summary Charts

The content of voluminous evidence that cannot conveniently be examined in court may be presented in the form of a summary chart. Fed. R. Evid. 1006. Such summary evidence is properly admitted when (1) the charts "fairly summarize" voluminous trial evidence; (2) they assist the jury in "understanding the testimony already introduced;" and (3) "the witness who prepared the charts is subject to cross-examination with all documents used to prepare the summary." *United States v. Needham*, 852 F.3d 830, 837–38 (8th Cir. 2017) (affirming admission of summary charts in child pornography trial). Charts properly admitted under Rule 1006 are evidence and are allowed in the jury room during deliberations. To ensure their proper use, the Government has provided a limiting instruction for the Court's consideration in its proposed jury instructions. *See United States v. Passick*, 849 F.2d 332, 339 (8th Cir. 1988).

To streamline the trial and deal with the significant volume of child pornography, the Government intends to offer a summary chart identifying the charged images. This chart lists the file names of each charged image, the full file path for each image, the

15

creation or modification date for the image, the associated Count, and a thumbnail-sized copy of the image itself. The charts fairly summarize underlying forensic information for each charged image, including creation/modification dates and file paths. They will also aid the jury in distinguishing between the images as they deliberate and facilitate the necessary unanimity of findings in the event of a guilty verdict. The Government will also offer summary exhibits that collect data from the phone extraction, such as a list of websites visited on the phone.

## II.   PROCEDURAL ISSUES

### A.   Presentation of Child Pornography Evidence to the Jury

The Indictment charges Defendant with receiving and/or possessing 12 enumerated child pornography images. To avoid re-victimizing the minors depicted and to minimize the negative impact to the Court, court staff, and the jury, while ensuring that the Government meets its burden of proof, the Government typically limits its presentation of child pornography during trial to redacted images of child pornography. The Eighth Circuit has repeatedly held that presenting child pornography evidence to the trier of fact in this manner is not unfairly prejudicial under Fed. R. Evid. 403. *See United States v. Evans*, 802 F.3d 942, 945–46 (8th Cir. 2015) (upholding the admission of a compilation of file names, images, and videos lasting a total of five minutes); *United States v. Becht*, 267 F.3d 767, 770, 774 (8th Cir. 2001) (affirming the admission of thirty-nine still images).

The United States anticipates publishing edited versions of some of the charged files. The Government has created short clips of 3–4 seconds, without audio, of the two video files charged in Count 1. The Government anticipates playing these unredacted clips only once. Thereafter, the Government will display only redacted still images from the videos. For the images charged in Count 2, the Government will move to admit both redacted and unredacted versions of the images, but anticipates displaying only the redacted images during trial. The exception is Image H, which depicts "Tara." The Government will show the unredacted image once while Captain Scoggins is on the stand so that he can authenticate the image and identify the victim. Consistent with past practice, the Government will provide the jury with a separate thumb drive of the unredacted files for use during deliberation.

**B.   *Rayl* Finding**

If requested by Defendant, the Government requests that the Court make a pretrial finding as a matter of law that a reasonable juror could find that the images at issue in this case depict sexually explicit conduct. *See United States v. Rayl*, 270 F.3d 709, 714 (8th Cir. 2001). "Sexually explicit conduct" is statutorily defined to include "sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal" as well as the "lascivious exhibition of the anus, genitals, or pubic area of any person." 18 U.S.C. § 2256(2)(A). The images enumerated in subparagraphs (a), (d), (g), and (h) depict adult

men engaging in sexual acts with prepubescent girls. The remaining images contain lascivious exhibition of the anuses and genitals of prepubescent girls.[6]

An image is lascivious "only if it is sexual in nature." *United States v. Kemmerling*, 285 F.3d 644, 646 (8th Cir. 2002). Although nudity is not a necessary condition for lasciviousness if other factors are present, "more than mere nudity is required before an image can qualify as 'lascivious' within the meaning of the statute." *Id.* at 645–46. Instead, the Eighth Circuit Model Jury Instructions direct the jury to consider a non-exhaustive list of the *Dost* factors to determine whether the image is sexual in nature, including the following:

> (1) whether the focal point of the picture is on the minor's genitals or pubic area;
>
> (2) whether the setting of the picture is sexually suggestive, that is, in a place or pose generally associated with sexual activity;
>
> (3) whether the minor is depicted in an unnatural pose or in inappropriate attire, considering the age of the minor;
>
> (4) whether the minor is fully or partially clothed, or nude;
>
> (5) whether the picture suggests sexual coyness or a willingness to engage in sexual activity;
>
> (6) whether the picture is intended or designed to elicit a sexual response in the viewer;
>
> (7) whether the picture portrays the minor as a sexual object; and
>
> (8) the caption(s) on the picture(s).

---

[6] Upon request, the Government will provide the unsanitized copies of the charged images for the Court's review.

Manual of Model Criminal Jury Instructions for the Eighth Circuit § 6.18.2252A (2017); *see also Wallenfang*, 568 F.3d at 657 (noting that a determination of lasciviousness should be based on the overall content of the image).

The enumerated files in this case that depict only the genitals of young girls are clearly lascivious. The victims in each picture are nude and are spreading their legs or otherwise posed in unnatural ways to ensure that the focus of each image is their genitals or anus. *See Wallenfang*, 568 F.3d at 658 (finding that a jury could reasonably conclude that an image of a child raising one leg to display her pubic area was lascivious a not "designed to provide a clinical view of the child's anatomy"). This posing also suggests a sexual coyness and the portrayal of the victims as sex objects. Taken together, it is clear that the images are sexual in nature. Therefore, the Government requests that the Court find that a reasonable juror could find that they contain lascivious exhibition of the victims' genitals and public areas.

### C.    Use of Exhibits in the Government's Opening Statement

The Government anticipates using a small selection of exhibits as part of its opening statement. The Government will confer with defense counsel as to whether the parties can stipulate as to the authenticity of these exhibits prior to trial. If no such agreement is reached, the Government may request that the Court rule on the admissibility of these exhibits during the parties' pretrial conference to permit the Government to use these exhibits in opening statement.

Dated: September 16, 2024

Respectfully Submitted,

ANDREW M. LUGER
United States Attorney

*/s/ Emily Polachek*

BY: EMILY A. POLACHEK
LEEANN K. BELL
Assistant U.S. Attorneys